378 So.2d 945 (1979)
DeEtte Barber GARRETT et al., Plaintiffs-Appellants,
v.
PIONEER PRODUCTION CORPORATION et al., Defendants-Appellees.
No. 6996.
Court of Appeal of Louisiana, Third Circuit.
May 23, 1979.
On Denial of Rehearings October 31, 1979.
*947 Seidel & Bailey, Fred K. Bailey, Lafayette, for plaintiffs-appellants.
Liskow & Lewis, Lawrence P. Simon, Jr., Lafayette, Cassidy & Millican by F. Jefferson Millican, Jennings, for defendants-appellees.
Before WATSON, STOKER and DOUCET, JJ.
WATSON, Judge.
Plaintiffs, the heirs of Austin M. and Amanda E. Barber, to-wit, DeEtte Barber Garrett, Maggie Johnson, Alma King, Marjorie Deloras Bivens Peterson, Robert James Bivens and Gloria Jean Bivens Landry, and the heirs' lessees-assignees, Jory Lynn Bernard and Irwin Hebert, brought this petitory action to claim the ownership of certain streets. Plaintiffs admit that the streets, primarily located in Barber's Subdivision and Barber's Addition, City of Jennings, are subject to a servitude of public use but claim the ownership. Named as defendants are the City of Jennings and its lessees and assignees, Pioneer Production Corporation, C. F. Braun & Company, Petro-Lewis Corporation and Terra Resources, Inc. The root of the controversy is the mineral rights to the property in dispute, which is delineated in yellow on the "Litigation Map". (TR. 189). Plaintiffs seek recognition of their ownership, an accounting of the proceeds from mineral production, and restitution, as well as damages and attorney's fees.
The trial court dismissed plaintiffs' suit with prejudice, concluding that the streets in Barber's Subdivision and Addition had been dedicated to the City both by substantial compliance with the requirements of Act 134 of 1896 and by formal, non-statutory dedication and that the other streets involved in the litigation had been dedicated by formal, non-statutory dedication. Plaintiffs have appealed, contending that their ancestors in title did not dedicate the streets to the public and, in the alternative, if they were dedicated, it was by informal non-statutory dedication which did not convey ownership. The defendant lessees have answered the appeal asking: that the judgment be affirmed; in the alternative, that the judgment be modified to hold that ownership of the portion of South Main Street fronting the William Booth Tract lies with the successors in interest of William Booth rather than plaintiffs; and that appellants pay all costs of trial and appeal.
I. The primary issue on appeal is whether there was a formal dedication of the streets in question, statutory, non-statutory, or both, which vested ownership in the public. If the dedication was informal, either implied or tacit, there is merely a servitude in favor of the public, and plaintiffs remain the owners and entitled, as such, to royalties *948 from oil production. LSA-C.C. art. 658.[1]
STATUTORY DEDICATION
Act 134 of 1896 reads in pertinent part as follows:
"To require all persons owning real estate in this State who desire to plat the same into squares or town lots to file in the office of the keeper of notorial [sic] records of the parish where the property is situated maps of such proposed towns or tracts of land before selling any part of same, and declaring any violation of this act to be a misdemeanor and providing a penalty for the violations hereof.
SECTION 1. Be it enacted by the General Assembly of the State of Louisiana; That whenever the owner or owners of any real estate situated in this State shall desire to lay off the same into squares or lots with streets or alleys between such squares or lots and with the intention of selling or offering for sale any of said squares or lots it shall be the duty of such owner or owners of such real estate, before selling any square or lot or any portion of same, to cause to be made and filed in the office of the Keeper of Notarial Records of the parish wherein such property is situated and copied into the Conveyance Record book of such parish, a correct map of the real estate so divided, which said map shall contain the following:
1. The section township and range in which such real estate lies or subdivision thereof according to government survey.
2. The number of squares by numerals from 1 up, and the dimensions of each square in feet and inches.
3. The number of each lot or subdivision of a square and its dimensions in feet and inches.
4. The name of each street and alley its length and width in feet and inches.
5. The name or number of each square or plat dedicated to public use.
6. A certificate of the Parish Surveyor of the parish wherein the property is situated in the correctness of the map.
7. A formal dedication made by the owner or owners of the property or their duly authorized agent of all the streets, alleys and public squares or plats shown on the map to public use."

* * * * * *
The above act is virtually identical with the present statute, LSA-R.S. 33:5051. Statutory dedication does not require proof of intention to dedicate which is inferred from the filing of a plat or map by the owner in the public records. Only substantial compliance with the statute is required. Parish of Jefferson v. Doody, 247 La. 839, 174 So.2d 798 (1965). Acceptance by the public is not necessary. Arkansas-Louisiana Gas Co. v. Parker Oil Co., 190 La. 957, 183 So. 229 (1938).
Plats were filed by unknown parties on April 8, 1905, for both Barber's Subdivision and Barber's Addition. Sixteen lots had been sold in each subdivision prior to the filing of the two plats. At least two corrective deeds were filed after the plats were recorded. Some lots were later sold by the Barbers with reference to the recorded plats. Other lots were sold after 1905 without reference to the plats being recorded. The trial court concluded that the two plats substantially complied with the requirements of the statute, even though filed by an unknown person after lots were sold. The plats identify the section, township and range of the real estate. The lots are numbered and their dimensions given, although the numbering system used for Barber's Subdivision is not completely clear. However, the plats do not name all the areas which appear to be streets or even denominate them as streets. Only two interior passages are named and identified as *949 streets on the two plats: West Street, Barber's Addition; and Levi Street, Barber's Subdivision. There are also two exterior or bordering streets shown on the plats: South Main Street, Barber's Addition; and Cedar Street, Barber's Subdivision.[2] These four named streets alone can be regarded as meeting the test of compliance with subsection 4 of Act 134 of 1896, quoted above, which requires street names. There is also no compliance with subsections 5, 6 and 7, although subsection 5 relates to those lots dedicated to public use and may be inapplicable.
Conrad v. Reine, 240 So.2d 915 (La.App. 4 Cir. 1970) holds that a plat or map must be filed before lots are sold in order to have a valid statutory dedication. That case is persuasive here where there is also minimal compliance with the other requirements of the statute. It is difficult to infer an intent to dedicate by the Barbers when it is not known that they filed the plats. Examination of the various deeds indicates that the plats might well have been filed by lot owners who wished to clarify their titles.
The most recent expression of the Louisiana Supreme Court on this subject is contained in Pioneer Production Corp. v. Segraves, 340 So.2d 270 (La. 1976). Pioneer dealt with highway 90, which had been dedicated prior to the Segraves subdivision of Jennings and was an exterior or bordering street. Pioneer points out that the public policy in favor of an orderly and systematic flow of traffic over properly planned streets is implemented by a servitude of use and does not require naked ownership of the underlying ground. Implicit in the Pioneer decision is the necessity of finding an intent to dedicate from the instrument filed by the subdivider. Pioneer concluded that the Segraves plat did not suffice to dedicate the naked ownership of the preexisting highway to the public. Here, South Main Street, shown as an exterior or bordering street of Barber's Addition, existed as a street long before the plats were filed. A sale to Octavia Barkus in 1899 describes the property sold as fronting on South Main Street and bounded by other owners. Another, sale, to Daniel Bobino in 1910, also describes the property as fronting on South Main Street. The same is true of a 1902 sale to Charles Madon, a 1903 sale to George Christian and a 1904 sale to Joseph H. Moultrie. Since South Main Street, an exterior street, was a preexisting street, no intention to dedicate its naked ownership to the public can be inferred from its appearance on the plat of Barber's Addition in 1905.
Cited with approval in Pioneer, supra, was Winningham v. Hill, 164 So.2d 384 (La. App. 2 Cir. 1964). Winningham decided that a 20' by 378' unidentified area on a plat was not statutorily dedicated to the public, when nothing on the space showed an intention to dedicate the property. In the instant situation, the only streets which could have been statutorily dedicated were West and Levi Streets. They are the only interior streets of the two subdivisions which are named or identified as streets. Both Levi and West were in existence before the plats were filed. A sale to Robinson Coleman in 1904 describes the property sold in terms of Main and West Streets, and a sale to John Folse in 1903 describes his lot as Lot Three (3) in Block Two (2) of Barber's Subdivision to Jennings, being South of Levi Street facing Cutting Avenue on the East.[3] A servitude for street purposes existed prior to the plats being filed.
The fact that lots were sold as early as 1899 and the plats were not recorded until 1905 prevents the recordation from manifesting an intent to dedicate by the Barbers. Conrad v. Reine, supra. There is no proof that the Barbers were responsible for the recordation. See Town of Pineville v. Ball, 10 La.App. 283, 119 So. 738 (1929) and State Department of Highways v. Claitor, 289 So.2d 527 (La.App. 1 Cir. 1974). *950 The plats are void of any dedicatory language. Compare Arkansas-Louisiana Gas Co. v. Parker Oil Co., supra. Substantial compliance with the statute has not been shown, and the streets in the two Barber subdivisions were not statutorily dedicated.
FORMAL NON-STATUTORY DEDICATION
The trial court concluded that the streets in the two subdivisions, as well as the other streets involved in this litigation, were dedicated to the public by formal, non-statutory dedication. This type of dedication requires proof of the owners' intention to dedicate the property and divest themselves of ownership. Mecobon, Inc. v. Police Jury of Jefferson Parish, 224 La. 793, 70 So.2d 687 (1954); Ross v. City of Covington, 271 So.2d 618 (La.App. 1 Cir. 1973) writ denied, 273 So.2d 844; Banta v. Federal Land Bank of New Orleans, 200 So.2d 107 (La.App. 1 Cir. 1967) writ denied, 251 La. 46, 202 So.2d 657. There is no proof of an intention to dedicate on the part of the Barbers and no act of donation or other instrument by which they transferred their ownership.
It is contended that there is a special situation with regard to the former street in the northwest quarter of the southeast quarter running south from South Street and Carter Street, because a specific intention to dedicate these streets was proven.
As to the former road running south from South Street, defendants contend that language in sale from Amanda Barber to Eloisine Morris shows such an intention. The 1924 act of sale transfers ownership of four acres according to certain fixed boundaries and states in pertinent part as follows:
"It is specially understood and made a part of the consideration of this sale and contract that the vendor has laid out a public street of not less than thirty (30) feet to run parallel with the east line of said land herein sold, and further thirty feet is not to be taken out of land hereinsold but measurements to begin from the street; said street to run and continue to the next street which is St. Petersburg Street."
A reference to a public street in a deed does not necessarily establish an intention to transfer ownership. Pioneer Production Corp. v. Segraves, supra; Jones Island Realty Co. v. Middendorf, 191 La. 456, 185 So. 881 (1939). The language quoted does not establish a specific intent to transfer ownership of the road rather than a servitude for public use. James v. Delery, 211 La. 306, 29 So.2d 858 (1947); State, Department of Highways v. Tucker, 247 La. 188, 170 So.2d 371 (1965). The same is true of Carter Street. There is no presumption that the ownership of property is transferred when there is no need for public ownership and the public needs are satisfied by a servitude. Pioneer Production Corp. v. Segraves, supra.
The trial court stated in its opinion that the property was not included in the Barber successions or carried on the tax rolls as part of the Barber estate. These facts are not relevant to the questions at issue. Mecobon, supra; Jouett v. Keeney, 17 La.App. 323, 136 So. 175 (2 Cir. 1931).
The trial court erred in concluding that there was a formal, non-statutory dedication. The streets involved are subject to a servitude of public use as the result of a tacit or implied dedication, which does not divest ownership. LSA-C.C. art. 658; Pioneer Production Corp. v. Segraves, supra.
II. Secondary issues are: (1) the ownership of a street bordering the William Booth (Grant Lewis) tract; and (2) prescription.
WILLIAM BOOTH TRACT
Defendants make an alternative contention that the West half of South Main Street where it borders the William Booth (Grant Lewis) tract belongs, if not to the City of Jennings, to the successors in interest of Booth.
The sale to William Booth in 1924 described the property sold as follows:
"Beginning at the Southeast Corner of Olive Booths' Two acres tract, on the east line of the northwest quarter of the *951 southeast quarter (NW ¼ of SE¼) of section three (3) in township ten (10) south, range three (3) west of the Louisiana meridian; thence southward with said quarter section line 105.2 feet to stake for corner; thence westward parallel to Olive Booth's south line 414.2 feet to stake for corner; thence northward parallel to the east line of the tract 105.2 feet, to the south corner of Olive Booth's two (2) acre tract; thence eastward with the south line of said tract 414.2 feet to the place of beginning, containing one (1) acre of land less a 25 foot strip off of the east end for road."
The quoted language evidences one intention and that is the sale of the tract except for 25 feet. The 25 feet is not sold but is reserved for a road. A reference to property reserved for a particular public use in a deed transferring other property obviously does not transfer the property excepted and reserved. See State Department of Highways v. Claitor, 289 So.2d 527 (La.App. 1 Cir. 1974). No intention to transfer ownership of the road is shown. The Barbers retained the ownership, and the public acquired a servitude for road purposes.
PRESCRIPTION
Defendants contend that plaintiffs' demands state a cause of action in tort, and any recovery is limited to one year's production from the time of filing suit, citing Liles v. Texas Co., 166 La. 293, 117 So. 229 (1928). However, plaintiffs' cause of action is primarily petitory and does not sound in tort. They are entitled to appropriate relief.
III. Since plaintiffs, DeEtte Barber Garrett, Maggie Johnson, Alma King, Marjorie Deloras Bivens Peterson, Robert James Bivens and Gloria Jean Bivens Landry, have proved their title to the disputed property and are entitled to be recognized as the owners, and their lessees-assignees, Jory Lynn Bernard and Irwin Hebert are entitled to be so recognized, the remaining issue is the other relief to which they are entitled. Plaintiffs have asked for judgment in their petitory action recognizing them as owners and lessees of the minerals, an accounting of the mineral production and removal of all clouds from their title. (TR. 13). This prayer does not ask for cancellation of the mineral leases. Plaintiffs, in this prayer, have shown an intention to ratify the mineral leases affecting the property. Liles v. Texas Co., supra; Nelson v. Young, 255 La. 1043, 234 So.2d 54 (1970). There is no evidence of bad faith on the part of defendants. In accounting for the proceeds of mineral production, defendants are entitled to offset the production costs. Plaintiffs are not entitled to attorney's fees. The matter will be remanded for the accounting and entry of the appropriate judgment.
IT IS ORDERED, ADJUDGED AND DECREED that plaintiffs, DeEtte Barber Garrett, Maggie Johnson, Alma King, Marjorie Deloras Bivens Peterson, Robert James Bivens and Gloria Jean Bivens Landry be recognized as the owners of the subject property in Section 3, Township 10 South, Range 3 West, described as follows:[4]
"A. All of the area shown as streets on the plat of Barber's Addition to the City of Jennings being 28 acres in the Northwest and Southwest Quarters of the Northeast Quarter, as recorded in the records of the Clerk of Court of Calcasieu Parish in Conveyance Book 64, Page 514, other than those areas on Penney Street on which the drainage ditch has encroached to such an extent that there exists property occupied and possessed by the neighboring lot owners, being Lots 65-39, and those small portions of Ella Street that deviate from the placement and position of that street as platted;
B. The following described streets or roads in the Northwest Quarter of the Southeast Quarter:

(a) That former road running South from South Street, having as its Western *952 border a line running South commencing approximately 880 feet East from the Northwest Corner of the Northwest Quarter of the Southeast Quarter and 235 feet South of the North boundary of the North Half of the Southeast Quarter thence South to the North boundary of the tract purchased by the City of Jennings from Amanda Barber in a sale dated September 5, 1923 and recorded under Entry No. 34404 in Conveyance Book 15, Page 153 of the records of the Clerk of Court of Jefferson Davis Parish, being approximately 310 feet, except for that portion of the tract bordering the William Booth and Olive Booth tracts and possessed by Lena Broussard;
(b) That portion of the North 20 feet of the South Half of South Street running East from the intersection of South Street and a Northerly extension of the Western boundary of the road described hereinabove in Item 2.(a), being the Northeast Corner of the P. K. Miller or Robert L. John tract, to an intersection with the Northerly extension of the Eastern boundary of the Ezabe Simon tract;
(c) That portion of the West Half of South Main Street bordering the William Booth (or Grant Lewis) tract, lying between and being bounded on the North by Olive Booth (or Lena Broussard) and on the South by the City of Jennings, and fronting on South Main Street.
C. The following described streets or roads in the Northeast Quarter of the Southeast Quarter:

(a) That portion of the East Half of South Main Street commencing from the Northern boundary of the Joseph Clark tract, being the Southern boundary of the Robert Hawkins Tract, approximately 354 feet North of the Southwest Corner of the Northeast Quarter of the Southeast Quarter, thence North to the Southern boundary of the William Lehman tract or addition, as set forth in the plat of survey recorded in the records of the Clerk of Court of Jefferson Davis Parish in Conveyance Book I, Page 399.
(b) That portion of the South Half of South Street lying North of the following described lots in Barber's Subdivision:
Block 5, Lot 1;
Block 4, Lots 1, 2, 3, 4;
Block 3, Lots 1, 2, 3, 4;
Block 1, Lots 1, 2, 3, 4; and,
Block 2, Lots 5, 6 and 9.
(c) That portion of the West Half of South Cutting Street fronting Barber's Subdivision and running South commencing 208.56 feet South of the Northeast Corner of the Northeast Quarter of the Southeast Quarter to a point 818.5 feet North of the Southeast Corner of the Northeast Quarter of the Southeast Quarter fronting on Block 6, Lot 3 of Barber's Subdivision;
(d) Levi Street in its entirety from its intersection on the West with South Main Street to its intersection on the East with South Cutting Street;
(e) Carter Street, being a street running South and Southwest from Levi Street through Barber's Subdivision to the Southern boundary of the Robert Hawkins tract, except as it encroaches on the Issac Clark and Robert Hawkins tracts on the West." (TR. 181-183).
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Jory Lynn Bernard and Irwin Hebert be recognized as the owners' lessees-assignees, subject to the existing leases held by the defendant oil companies.
The judgment of the trial court is affirmed insofar as it dismissed, with prejudice, plaintiffs' claims to the property described in the petition but not included in yellow on the "Litigation Map".
The matter is remanded to the trial court for further proceedings not inconsistent with this opinion; for an accounting of all sums due plaintiffs by defendants; and for entry of judgment in favor of plaintiffs, and against defendants, for all sums due *953 plaintiffs as owners and mineral lessees of the above described property.
All costs are assessed to defendants.
REVERSED IN PART; AFFIRMED IN PART; AND REMANDED.

ON REHEARING
A rehearing was granted to reconsider the question of the relief to be granted plaintiffs because the original briefs and arguments concentrated on the issue of ownership.
The principal thrust of plaintiffs' additional argument is against our conclusion that the mineral leases held by the Pioneer group have been ratified and that further proceedings should be had accordingly. We are not persuaded that our conclusion was incorrect. Plaintiffs prayed, alternatively, for every conceivable type of relief with one exception: they did not pray for cancellation of the Pioneer leases.
It seems to us that the City of Jennings acted as a gestor on behalf of the plaintiff-owners, giving rise to a quasi-contractive relationship between plaintiff-owners and the Pioneer group. The City leased the property with an 1/6 royalty, (see Joint Exhibit 2 including lease from City of Jennings to Pioneer dated February 13, 1974) while the leases from plaintiff-owners to plaintiff-lessees provide an 1/8 royalty. (See Joint Exhibit 2 including various leases from plaintiff-owners). Certainly there would be no justice in our ordering cancellation of the better lease from the plaintiff-owners' point of view. This may give rise to problems between the plaintiff-owners and the plaintiff-lessees, but those problems are not now before the court. We note, parenthetically, that plaintiff-lessees were well aware of the Pioneer lease. (See deposition of Gerald Irwin Hebert, p. 18, Joint Exhibit 2).
Thus, we conclude that our original judgment was correct with the exception that there is no need for an adjustment for a credit covering costs of operation and production, as pointed out by defendants. It is amended accordingly.
The right of all parties to apply for a rehearing is reserved.
Original decree AMENDED AND REINSTATED.
NOTES
[1] "Art. 658. The part of an estate upon which a servitude is exercised, does not cease to belong to the owner of the estate; he who has the servitude has no right of ownership in the part, but only the right of using it.

Hence the soil of public roads belongs to the owner of the land on which they are made, though the public has the use of them; the owners of the land can not change the roads except in conformity with the regulations of the police established on this subject."
[2] According to the "Litigation Map", plaintiffs do not claim the ownership of Cedar Street except where it intersects with two other streets.
[3] The recorded plat shows Block 2 as north of Levi Street.
[4] Recognized and made a part of this judgment is the parties' stipulation that the "Litigation Map" or plat will govern in the event of any discrepancy between it and the verbal description.